IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05cv348

| | |
|---|---|
| LESLIE A. WHITTINGTON,         ) | |
| )                                                                | |
| **Plaintiff,**                                             ) | |
| )                                                                | |
| Vs.                                                           ) | **MEMORANDUM AND** |
| )                                                                | **RECOMMENDATION** |
| NORTH CAROLINA DEPARTMENT   ) | |
| OF JUVENILE JUSTICE AND         ) | |
| DELINQUENCY PREVENTION,     ) | |
| )                                                                | |
| **Defendant.**                                         ) | |
| _____    ) | |

**THIS MATTER** is before the court upon defendant's Motion to Dismiss. Having carefully considered defendant's Motion to Dismiss and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

**FINDINGS AND CONCLUSIONS**

**I.    Background**

In this action, plaintiff, an African-American, contends that he was not properly compensated for his work as an "acting" unit administrator for the North Carolina Department of Juvenile Justice and Delinquency Prevention. Plaintiff further contends that after he filed a charge of discrimination with the state personnel office, claiming pay disparity with white employees, defendant retaliated against him by "demoting" him back to his job as assistant unit administrator, which resulted in a reduction in pay or a return to the pay he was receiving before he became an acting administrator.

Based on this series of events, plaintiff has asserted two causes of action: (1) as a first cause of action, a claim for violation of Title VII of the Civil Rights Act of 1964; and (2) as a second cause of action, a claim for violation of the racial discrimination provisions of 42,

**1**

United States Code, Section 1981. Complaint, at ¶ ¶ 22-25.

While not expressed as separate claims, each cause of action has two sub-contentions, which are that defendant violated the relevant statutory protection through: (a) racial discrimination in employment; and (b) retaliation for opposing discriminatory practices. Id. For ease of reference, the undersigned will refer to such claims as sub-contentions 1(a), 1(b), 2(a), and 2(b).

Defendant has moved to dismiss the Complaint in its entirety, arguing that sub-contention 1(a) is time barred and that all claims fail to state a claim upon which relief could be granted. In response to the first argument, plaintiff "concedes that there may be a basis on which the Court could consider dismissal of the Title VII race discrimination claim." Plaintiff's Brief, at 2, fn.1. Plaintiff argues, however, that he has properly alleged "adverse employment actions" for all other contentions, and has provided a brief in support of such argument. Defendant has timely waived its right to file a reply.[1]

## II.  Applicable Standard: **Rule 12(b)(6)**

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on

---

[1] Defendant filed a Notice on March 6, 2006, that it did not intend to file a reply. While a reply is not required, L.R. 7.1(A), the undersigned appreciates the opportunity to review any responsive argument counsel may have prior to such argument being made to the district court in the form of an "objection."

outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiff in the Complaint and will view them in a light most favorable to plaintiff.

### III. Discussion

####    A.    Motion to Dismiss the Sub-Contention 1(A)

Defendant has moved to dismiss sub-contention 1(a). Defendant argues that plaintiff failed to file a timely charge of discrimination with the Equal Employment Opportunity

**3**

Commission (hereinafter "EEOC").[2] Plaintiff has, as discussed above, conceded the motion.

Irrespective of such concession, the undersigned has reviewed the argument of defendant as well as the dates provided and determined that sub-contention 1(a) is untimely. Based on the uncontested dates provided, plaintiff's deadline for submission of a charge of discrimination to the EEOC was not later than May 28, 2003, which is 300 days from the date plaintiff began official service as acting unit administrator.

Where a state employee first utilizes a state agency in bringing a claim for discrimination, a charge of discrimination must be filed with the EEOC not later than the *earlier* of 300 days after the alleged unlawful employment practice or 30 days after termination of proceedings by the state agency. 42 U.S.C. § 2000e-5(e)(1). While the discrimination laws are generally intended to protect employees, this rule of limitation protects employers from having to defend against stale claims. Delaware State College v. Ricks, 449 U.S. 250, 256-57 (1980). In Hamilton v. 1st Source Bank, 928 F.2d 86 (4th Cir. 1990), the Court of Appeals for the Fourth Circuit held, as follows:

> [The limitations period is] designed not to defeat justice, but to promote it by preventing "surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."
>
> * * *
>
> Every limitations period reflects a tension between the dual goals of protecting valid claims and prohibiting pursuit of stale ones. Congress afforded potential plaintiffs under the ADEA what it considered to be a reasonable time to present claims. In setting a 180-day period in which employees could file complaints with the EEOC, Congress considered and balanced the competing policies of investigating and settling claims promptly, and protecting the aged from discrimination. We cannot second-guess its judgment.

Id., at 90. In Chardon v. Fernandez, 454 U.S. 6 (1981), the Supreme Court held that the

---

[2] Under the Civil Rights Act of 1991, there is no requirement that a plaintiff first present a Section 1981 claim to the EEOC before filing such in federal court.

**4**

proper focus is on the time of the discriminatory act, not the point at which the act became painful. The Court of Appeals for the Fourth Circuit held:

> The filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision regardless of when the effects of that decision come to fruition.

Felty v. Graves-Humphreys Co., 785 F.2d 516, 518 (4th Cir. 1986).

In compliance with this reasoning, the undersigned has viewed the starting date of the period of limitations as the first date on which plaintiff was officially "acting unit administrator," which is the date most favorable to the plaintiff. Even if that later date is applied, it appears that the period of limitations ran not later than May 2003, making plaintiff's August 2003 submission of a charge of discrimination untimely. No argument has been provided that would warrant the tolling of such period.

The undersigned will, therefore, recommend that defendant's Motion to Dismiss sub-contention 1(a) be granted in accordance with Rule 12(b)(6), Federal Rules of Civil Procedure. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (the filing of a timely administrative charge is "mandatory, but not jurisdictional, and is subject to equitable tolling.)[3]

**B.      Motion to Dismiss Sub-contention 1(B) and Sub-contentions 2(A) and 2(B)**

Defendant next contends that the balance[4] of the Complaint should be dismissed

---

[3] The undersigned notes for purposes of clarity that defendant has not moved to dismiss sub-contention 1(b) § 2000e-(5)(e)(1). Sub-contention 1(b) concerns alleged retaliation for filing the state administrative claim of discrimination, which came much later than the alleged conduct giving rise to sub-contention 1(a). A civil action filed in federal court under Title VII may only encompass misconduct that was the subject of the timely filed charge of discrimination with the EEOC. Shehadeh v. Chesapeake & Potomac Tel. Co., 595 F.2d 711, 724 (D.C.Cir.1978)

[4] Defendant has also argued that sub-contention 1(a) should also be dismissed for insufficient pleading; however, that argument need not be addressed in light of plaintiff's concession concerning the timeliness of sub-contention 1(a).

because plaintiff has failed to plead sufficient facts to state a claim for relief under either Title VII or Section 1981. Defendant contends that all three sub-contentions should be dismissed because plaintiff has failed to sufficiently allege facts upon which a jury could find an "adverse employment action," which is an element common to each remaining claim.

Regardless of whether plaintiff's claims are brought under Title VII or Section 1981, plaintiff has the burden of pleading that he was subjected to an "adverse employment action." Inasmuch as plaintiff is claiming both discrimination and retaliation, he has made different factual allegations to support such claim.[5]

### 1. Sub-contention 2(a): Section 1981 Racial Discrimination in Employment

In sub-contention 2(a), plaintiff contends that the failure to pay him an additional eight percent in salary when he was acting unit administrator was an adverse employment action. He argues that later payment of such amount in arrears does not diminish the adverse nature of initial action because he "lost the use" of his wages during the period in question.[6] Specifically, plaintiff has alleged that, unlike similarly situated white employees, Complaint, at ¶ 16, he did not receive an eight percent salary adjustment when he became acting unit administrator in August 2002, id., at ¶ 15, but only received such compensation for the relevant period on June 27, 2003, in arrears, when defendant acknowledged he was entitled to such increase. Id., at ¶ 20.

Plaintiff argues that such allegations are sufficient to satisfy his minimal pleading

---

[5] Plaintiff has used a method of pleading which requires the court to pick and choose among the group of factual allegations those that may support the claims that follow.

[6] Plaintiff does not make such a succinct statement in his Complaint; however, the undersigned finds that such a conclusion could be reasonably inferred from his allegations. See Complaint, at ¶¶ 14-21.

requirements as to his remaining claim of racial discrimination inasmuch as "lost use of wages" may constitute an adverse employment action. Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208 (2d Cir. 2001). The undersigned has carefully considered this argument, and reviewed the cited case as well as the dozen or fewer cases which have addressed this concept, mainly in the Second Circuit. Decisions of the Court of Appeals for the Second Circuit are not controlling authority in the Fourth Circuit; however, where such an opinion is not inconsistent with cases within the Fourth Circuit, the undersigned finds such opinions to be persuasive.

In the Fourth Circuit, an adverse employment action includes any act having an adverse impact on the terms, conditions, or benefits of employment. Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001).

> [D]ischarge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion [are] the typical requirements for a showing of an 'adverse employment action' that can support a Title VII claim.

Oglesby v. Ford Motor Co., 2005 WL 1993434, 10 (E.D.Va. 2005)(citation and corresponding quotation marks omitted). It is plaintiff's contention that unlike white employees who were temporarily assigned additional duties, he was denied an immediate pay increase commensurate with such additional duties because of his race. Plaintiff's implicit argument is that payment of his wages in arrears does not turn an *adverse* employment action into an *appropriate* employment action because, unlike similarly situated white employees, plaintiff lost economic use of such pay increase during the period in question.

The claim alleged by plaintiff here is not unlike the claim in Ledbetter v. Alltel Corporate Services, Inc., 2006 WL 278127 (8th Cir. February 7, 2006). In that case, plaintiff was an African-American who had been given additional, supervisory duties without an

7

increase in pay. There, the court found that such conduct by the employer was an adverse employment action:

> Finally, ACS argues that giving Ledbetter the title of "acting" manager is not an adverse employment action. An "adverse employment action" is a "material employment disadvantage, such as a change in salary, benefits or responsibilities." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir.2005). It includes decisions such as failing to promote, or reassigning an employee to a position with significantly different responsibilities. *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 530 (8th Cir.1999). While ACS argues that Ledbetter suffered no material disadvantage as "acting" manager, the district court found that he undertook new responsibilities without additional pay, which constituted an adverse employment action. Moreover, the district court credited Ledbetter's testimony that he readily assumed the management position, did a good job, and was continually embarrassed by the delay in reclassification and a salary increase. As the district court is in the best position to make such credibility determinations, and the record supports the finding that Ledbetter assumed additional responsibilities without receiving a raise, the district court's findings are not clearly erroneous.

Id., 2006 WL, at _____ (8th Cir. February 7, 2006).[7]

The undersigned finds the allegations of the Complaint, and the reasonable inferences arising therefrom, to allege "an adverse employment action."

> While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In this case, the words "adverse employment action" are also a legal conclusion, and the undersigned has attempted to concentrate review on the facts alleged by plaintiff which could be read to support his claim for relief. Finding that the Second Circuit's decision in Lovejoy-Wilson that lost use of wages is an adverse employment action is not inconsistent with decisions within the Fourth Circuit holding that "[d]ecreases in compensation due to discrimination are

---

[7] Star pagination not yet available from Westlaw on this decision.

consistently held to constitute adverse employment actions," Brand v. North Carolina Dept. of Crime Control and Public Safety, 352 F.Supp.2d 606, 615 (M.D.N.C. 2004), plaintiff has made sufficient allegations to support his claim for retaliation. Whether plaintiff has direct or circumstantial evidence that such failure resulted from intentional racial discrimination, Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 240 (4th Cir. 1982),or will rely on a burden shifting method proof, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or whether defendant has unrebutted evidence that such failure to pay wages was caused by constitutionally in-actionable negligence by state officials, Morrash v. Strobel, 842 F.2d 64 (4th Cir. 1987), is not relevant under Rule 12(b)(6) and are questions left for summary judgment and perhaps trial.

The undersigned will, therefore, respectfully recommend that defendant's Motion to Dismiss sub-contention 2(a) be denied in accordance with Rule 12(b)(6), Federal Rules of Civil Procedure.

**2. Subcontentions 1(b) and 2(b): Title VII and Section 1981 Claims for Retaliation**

"[T]o establish a prima facie case of retaliation, . . . [a plaintiff] must show that (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal link between the adverse action and the protected activity." Ware v. Potter, 106 Fed.Appx. 829, *831 (4th Cir. 2004).[8] In the context of Rule 12(b)(6), plaintiff is simply required to plead rather than "show" each element. Regardless of whether a claim of retaliation is brought under Section 1981 or Title VII, plaintiff is required to allege an "adverse employment action."

---

[8] Due to the limitations of electronic filing, reference to such unpublished decision of the Court of Appeals of the Fourth Circuit is made by incorporation of such decision by reference to reporter in which such decision may be found.

**9**

The Court of Appeals for the Fourth Circuit has held that an adverse employment action includes any retaliatory act "if, but only if" the act impacted the "terms, conditions, or benefits" of employment. Von Gunten v. Maryland, supra, at 866 (internal quotation marks omitted); see also Gregory v. City of Virginia Beach, 2006 WL 208589, *8 (E.D.Va. 2006). Consistent with defendant's argument, some courts have held that the failure of an employer to place a person in a temporary duty assignment is not an adverse employment action:

> In the Fifth Circuit, mediate decisions, even those that might limit an employee's potential for future promotion, do not constitute adverse employment actions under Title VII or Section 1981. *See Davis v. Dallas Area Rapid Transit*, 2003 WL 21501899, at *7 (denial of access to study materials and exam required for promotion do not constitute adverse employment actions); *Sinegar v. Jefferson Parish Sch. Bd., No. 00'2240*, 2003 WL 21977157, at *5 (E.D.La. Aug.13, 2003) (warnings, reprimands, and threats to fire do not constitute adverse employment actions under Title VII or Section 1981). Denial of temporary duty as a course instructor is an employment action that does not affect job duties, compensation, or benefits, and accordingly is not an adverse employment action.

Erves v. City of Dallas, 2004 WL 904122, *6 (N.D.Tex. 2004). Even in those cases, however, a distinction appears to be made between temporary duty assignments that come with an increase in pay and those that do not. Here, plaintiff has alleged that soon after he filed his claim of discrimination with the state agency, Complaint, at ¶ 17, he was removed from his assignment as acting unit administrator and returned to his previous job as assistant unit administrator, id., at ¶ 18, a job with a lesser pay grade. Id., at ¶ 21.

In moving to dismiss these claims, defendant contends that removal from a temporary assignment is not an "adverse employment action," because, according to the North Carolina State Personnel Manual, such does not constitute a demotion. Defendant's Brief, at 10-11.

**10**

[9] While that publication would be evidence admissible on summary judgment or at trial, a "demotion" and an "adverse employment action" are not synonymous, inasmuch as it is conceivable to have a decrease in pay that is in fact not a demotion.

Plaintiff's claim and defendant's reasoning for dismissal are not unlike the situation considered in Hodge v. City of Long Beach, 306 F.Supp.2d 288 (E.D.N.Y. 2003):

> Defendants' argument that Hodge's "constructive demotion" from his temporary appointment as Assistant Animal Warden back to Animal Control Officer may not be an actionable adverse employment action . . . is worthy of consideration. However, for purposes of this motion to dismiss, Hodge's uncontested allegation that his pay was reduced from Grade 11, Step 4 to Grade 10, Step 2 is enough to show such adverse action.

Id., at 293. In this case, plaintiff has also alleged that his state paygrade was reduced from 68 as an acting unit administrator back to paygrade 63 as assistant unit administrator when defendant terminated his assignment as acting unit administrator.

While defendant has cited a number of cases which would support the proposition that ending of temporary duty was not a "demotion," such cases dealt with the issue in the context of summary judgment. See Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999); Thompson v. Potomac Elect. Power Co., 312 F.3d 645, 651 (4th Cir. 2002); Von Guten v. Maryland, supra, at 865. Further, whether the temporary duty is those cases came with an

---

[9] The undersigned has not stricken defendant's citation to and reliance on the North Carolina State Personnel Manual under Rule 12(b).

> [W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment. The Court finds that Chapter 752 of the Personnel Manual and the various letters and materials produced in the course of plaintiff's discharge proceeding, all of which have been attached to plaintiff's opposition papers, fall under this exception and may be considered without converting the motion to one for summary judgment.

Vanover v. Hantman, 77 F.Supp.2d 91, 98 (D.D.C. 1999). While the Complaint here does not refer specifically to the personnel manual, such manual is central to plaintiff's claims.

**11**

increase in pay will be a relevant factor at the summary judgment stage of these proceedings.

Finding that plaintiff has satisfactorily "allege[d] facts that support a claim for relief" for claims of retaliation under both Section 1981 and Title VII, the undersigned will, respectfully, recommend that defendant's Motion to Dismiss sub-contentions 1(b) and 2(b) be denied.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Dismiss (#6) be **ALLOWED** as to Sub-contention 1(A), and **DENIED** as to Sub-contentions 1(B), 2(A), and 2(B).

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: March 9, 2006

Dennis L. Howell
United States Magistrate Judge