IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05cv348

| | |
|---|---|
| LESLIE A. WHITTINGTON, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>NORTH CAROLINA DEPARTMENT )<br>OF JUVENILE JUSTICE AND )<br>DELINQUENCY PREVENTION, )<br>)<br>Defendant. )<br>_____ ) | **SECOND<br>MEMORANDUM AND<br>RECOMMENDATION** |

**THIS MATTER** is before the court upon defendant's second Motion to Dismiss (#18), plaintiff's Opposition to Motion to Dismiss (#22), and defendant's "Notice" (#23) in which defendant opted not to reply. Inasmuch as the United States Supreme Court issued a landmark decision on the issue of retaliation the day before defendant filed its notice, Burlington Northern & Santa Fe Railway Co. v. White, ___ U.S.___, 2006 WL 1698953 (June 22, 2006), the undersigned Ordered that a hearing be conducted on defendant's motion inasmuch as one of the claims it seeks to dismiss is a claim of retaliation. Having carefully considered defendant's second Motion to Dismiss, reviewed the pleadings, and heard oral arguments, the court enters the following findings, conclusions, and Recommendation.

**FINDINGS AND CONCLUSIONS**

**I.    Background**

In this action, plaintiff, an African-American, Amended Complaint, at ¶ 1, brings two claims for relief: first, a claim under 42, United States Code, Section 1981 for racial discrimination in employment, id., at ¶¶ 25-26; and second, a claim under 42, United States Code, Section 2000e for retaliation for filing a complaint of discrimination. Id., at ¶ 27-28.

**1**

A.  **Factual Allegations Made In Support of Section 1981 Claim**

Plaintiff alleges that he is an African-American who has been employed by the State of North Carolina since 1985. Id., at ¶ 10.[1] Plaintiff has been in the continuous employment of the North Carolina Department of Juvenile Justice and Delinquency Prevention since 1992. Id., at ¶ 11. Since 1999, plaintiff has served the State of North Carolina as an "Assistant Unit Administrator" at its Swannanoa Youth Development Center in Black Mountain, North Carolina. Id., at ¶ 11-12. Plaintiff performed this duties at paygrade 63. Id., at ¶ 12.

Plaintiff alleges that in March 2002, the Assistant Secretary of the Department informed his as well as his fellow Assistant Unit Administrators that they would be designated as "Campus Duty Officers," id., at ¶ 13, and that they would be thereinafter performing the duties of "Unit Administrators" rather than "Assistant Unit Administrators," which plaintiff alleges is work compensated by the state at the higher grade 68 level. Id. According to plaintiff's allegations, the persons who were already "Unit Administrators" at grade 68 were also designated as "Campus Duty Officers." Id., at ¶ 13-14. Plaintiff alleges that he requested to be paid at grade 68, but that he did not receive such increase. Id., at ¶ 14.

Plaintiff alleges that in August 2002 he was officially promoted to "Acting Unit Administrator." Id., at ¶ 15. Thereafter, plaintiff continued to make requests for a salary increase to grade 68, which were denied. Id.

Plaintiff alleges that other employees who were in acting positions received additional compensation for their additional duties. Id., at ¶ 16-17. First, plaintiff alleges that the

---

[1]    Plaintiff alleges that he left state employment for two-and-one-half years to work at a mental health facility. Id.

**2**

person who made such uncompensated promotion, J. B. Simmons, was also in an "acting" position, that being "Acting Director" of the Department, and that he was being paid at the salary of the director of department for the additional duties he assumed. Id., at ¶ 16. Plaintiff alleges that Simmons is white. Id., at ¶ 18. Second, plaintiff alleges that Lani Lancaster, who was promoted from Unit Administrator to Acting Assistant Director of the Swannanoa facility was compensated for such duties shortly after make a request for compensation. Id., at ¶ 17. Plaintiff alleges that Lancaster is white. Id. Plaintiff specifically alleges that at the same time defendant compensated Lancaster for her additional acting duties, it refused to compensate him. Id. Plaintiff also alleges that other white employees of the defendants received salary increases either immediately or shortly after receiving acting promotions. Id., at ¶ 18.

**B.     Factual Allegations Made In Support of Claim for Retaliation**

In addition to the above allegations (which plaintiff fully incorporated in both claims), plaintiff has made the following allegations in support of his claim of retaliation.

First, plaintiff alleges that he made an administrative claim of discrimination by filing a Petition for a Contested Case Hearing with the North Carolina Office of Administrative Hearings on April 23, 2003. Id., at ¶ 19. In that petition, plaintiff claimed that he did not receive a salary increase after being promoted to an acting position based on his race and age. Id.

Second, plaintiff alleges that on April 29, 2003, six days after filing the petition, that he received a letter from the director of the department "which stated that he was not acting in any "acting" capacity. Id., at ¶ 20. Plaintiff alleges that the director "made this assertion despite the August 16, 2002, Memorandum announcing Mr. Whittington's promotion to Acting Unit Administrator. Id. Plaintiff has attached to his Amended Complaint both the

3

letter and the memorandum he referenced in such allegation.

Third, plaintiff alleges that other persons who had been promoted to acting positions continued in those positions following plaintiff's April 29, 2003, demotion to Assistant Unit Administrator. Id., at ¶ 21. Plaintiff further alleges that despite being demoted, he was still required to perform the duties of a Unit Administrator, but was after April 29, 2003, not being compensated for such duties. Id., at ¶ 22.

Fourth, plaintiff alleges that two months after the demotion, defendant acknowledged that he was entitled to compensation for his assumption of the Unit Administrator duties, and retroactively paid plaintiff an eight percent salary increase for the period March 15, 2002, through April 29, 2003, a sum of $2500. Id., at ¶ 23.

Fifth, and finally, plaintiff alleges that he continued to perform the duties of a unit administrator at the lesser paygrade up to December 14, 2005. Id., at ¶ 24. On that day, the alleges that director of the Swannanoa facility informed him as well as the other "Campus Supervisors" that they would now report to the Unit Administrator rather than the Assistant Director, and that his duties are now what they were when he was originally placed in the Assistant Unit Administrator position. Id. Plaintiff contends that he was not compensated for his additional duties between April 29, 2003, and December 14, 2005. Id.

## II. Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with

**4**

needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the Amended Complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). The Court of Appeals for the Fourth Circuit has, however, long held that when a court considers a motion to dismiss, it

> must accept the well-pled allegations of the complaint as true, and [it] must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiffs.

**5**

Chisolm v. TranSouth Financial Corp., 95 F.3d 331, 334 (4th Cir.1996)(citation omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiff in the Amended Complaint and will view them in a light most favorable to plaintiff.

### III. Discussion

Defendant contends that both the Section 1981 claim and the Title VII claim for retaliation must be dismissed because plaintiff has failed to adequately allege an adverse employment action. Defendant argues that

> Plaintiff fails to set forth sufficient facts to allege each element of his claim. In order to support a claim for relief based on racial discrimination or retaliation Plaintiff must allege that he suffered an adverse employment action.

Defendant's Brief in Support, at 7 (#19). As in the previous Complaint, plaintiff has again used a method of pleading which incorporates all allegations of the Amended Complaint into each claim for relief, and provides the court with no detail, as follows:

FIRST CAUSE OF ACTION
42 U.S.C. § 1981 CLAIM

25. Mr. Whittington incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

26. The DJJDP has discriminated against Mr. Whittington in the terms and conditions of the Mr. Whittington's employment because of the Mr. Whittington's race and in retaliation for opposing DJJDP's discriminatory practices, all in violation of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981.

SECOND CAUSE OF ACTION
VIOLATIONS OF TITLE VII ON THE BASIS OF RETALIATION

27. Mr. Whittington incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at

   length herein.

 28. The DJJDP has discriminated against Mr. Whittington in the terms and conditions of Mr. Whittington's employment in retaliation for Mr. Whittington opposing the DJJDP's discriminatory practices, all in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

Amended Complaint, at 7.

In order to survive a Rule 12(b)(6) motion, a plaintiff is not required to plead a *prima facie* case of discrimination under either Title VII or Section 1981. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).

> This Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283, n. 11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Consequently, the ordinary rules for assessing the sufficiency of a complaint apply.

Id., at 51. Those "ordinary rules" of pleading are found in Rule 8(a), Federal Rules of Civil Procedure, which require that a

> pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) <u>a short and plain statement of the claim showing that the pleader is entitled to relief</u>, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed.R.Civ.P. 8(a) (emphasis added). In this case, plaintiff has clearly asserted a "short and plain statement" of the plaintiff's claims.

Plaintiff must, however, plead facts sufficient to state each element of the asserted claim. Bass v. E.I. Dupont De Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). The Court of Appeals for the Fourth Circuit held in Bass that under Swierkiewicz

7

> a plaintiff is not charged with "forecast[ing] evidence sufficient to prove an element" of her claim. Our circuit has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim. . . . . . While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief.

Id., at 764 -765 (citations omitted).

Defendant takes issue in each claim with plaintiff's factual allegations supporting the element of "adverse employment action," an element which is common to both a Section 1981 claim and a Title VII claim for retaliation. James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 n. 1 (4th Cir. 2004); McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991); and Luy v. Baltimore Police Dept., 326 F.Supp.2d 682, 688 (D.Md. 2004). Inasmuch as the alleged adverse employment action is different in each claim, the undersigned will review each claim separately.

### A. Section 1981 Claim

Without doubt, plaintiff's Section 1981 claim does not point to the exact factual allegations that support his claim that he was discriminated against in his employment based on his race. Instead, the Section 1981 incorporates all allegations of the Amended Complaint. Reading the Amended Complaint liberally, plaintiff is now alleging that the adverse employment he was being subjected to was assignment of additional duties without compensation.

Plaintiff alleges that in March 2002, the Assistant Secretary of the Department informed him as well as his fellow Assistant Unit Administrators that they would be designated as "Campus Duty Officers," id., at ¶ 13, and that they would be thereinafter performing the duties of "Unit Administrators" rather than "Assistant Unit Administrators," which plaintiff alleges is work compensated by the state at the higher grade 68 level. Id. According to plaintiff's allegations, the persons who were already "Unit Administrators" at

grade 68 were also designated as "Campus Duty Officers." Id., at ¶ 13-14. Plaintiff alleges that he requested to be paid at grade 68, but that he did not receive such increase. Id., at ¶ 14. Plaintiff alleges that other white employees who were in acting positions received additional compensation for their additional duties. Id., at ¶ 16-17.

An allegation that a person was assigned additional duties without compensation is sufficient to satisfy the pleadings requirements of Rule 8(a) inasmuch as an allegation of additional duties without adequate compensation can be an adverse employment action.

> Plaintiffs' claims of additional duties or enhanced responsibilities without commensurate pay increases could establish an unlawful alteration of the "compensation, terms, conditions, or privileges" of their employment.

Chavez v. New Mexico, 397 F.3d 826, 838 -39 (10th Cir. 2005). Defendant appears to argue that an allegation of additional duties is insufficient because (1) his responsibilities were "changed" along with his coworkers, and (2) an exhibit to the Amended Complaint indicates plaintiff's willingness to accept the acting position without compensation.

> Plaintiff has not plead any fact in his amended complaint to allege that he suffered an adverse employment action. Based on the facts as alleged by Plaintiff, he was given a new job title, as were his co-workers. (Amended Complaint ¶13) Based on the facts as alleged by Plaintiff, his responsibilities were changed, as were his co-workers' responsibilities. (Amended Complaint ¶ 13) Plaintiff requested compensation for the time he spent as an acting Unit Administrator and later received compensation. (Amended Complaint ¶¶ 15, 23) Plaintiff alleges that a white female also requested compensation and later received it. (Amended Complaint ¶ 17) Plaintiff has submitted an exhibit which indicates that Plaintiff, and a white female employee, accepted acting positions with a willingness to take on extra duties with no compensation and no promises and which proves that Plaintiff's acting Unit Administrator assignment came with no promises, no increase in compensation and no time frame. (Amended Complaint Exhibit C)

Defendant's Brief in Support, at 10.[2] Each argument will be addressed *seriatim*.

---

[2] Defendant's brief suffers from a lack of differentiation between defendant's Motion to Dismiss the Section 1981 claim and its Motion to Dismiss the Title VII claim for retaliation.

Defendant attempts to diminish plaintiff's allegations by first arguing that plaintiff's job duties were "changed" along with the job duties of others. Id. What plaintiff specifically alleged was, as follows:

> As a result, Mr. Whittington, along with Mr. Allen and Mr. Corpening, assumed additional duties not required of Assistant Unit Administrator, including but not limited to reporting directly to the Assistant Director of the Swannanoa facility (as opposed to the Ms. Lancaster, Unit Administrator), being completely responsible to [*sic*] the day-to-day activities of the facility during their respective shifts, and handling disciplinary issue [*sic*] regarding cottage supervisors and parents and other facility staff.

Amended Complaint, at ¶ 13. What plaintiff has alleged is a great deal more than mere "change," but being "completely responsible" for the "day-to-day activities of the facility...." Id. Further, in deciding a Rule 12(b)(6) motion, this court may take judicial notice,[3] and this court takes notice that the Swannanoa facility is no day camp for privileged children, but a secured facility for troubled and violent teenagers. An allegation that a person is placed in a position of being "completely responsible" for the daily activities of the Swannanoa facility, without compensation, is not, therefore, a *de minimis* allegation and could, if later proved, amount to an adverse employment action. Thus, plaintiff has made factual allegations of substantial "additional duties or enhanced responsibilities." Chavez, supra. That other co-workers were allegedly subjected to the same adverse employment action does not diminish the allegation.

---

[3] The district court earlier held in this matter that a "court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." Whittington v. North Carolina Dept. of Juvenile and Delinquency Prevention, 2006 WL 909141, *1 (W.D.N.C. 2006). Further, a "court may take judicial notice of matters which are so commonly known within the community as to be indisputable among reasonable men, or which are capable of certain verification through recourse to reliable authority." Green v. Warden, U.S. Penitentiary, 699 F.2d 364, 369 (7th Cir. 1983). The troubles with the population of the Swannanoa facility are well known in the Asheville community and documented in numerous newspaper and television accounts.

Defendant next argues that this court should also consider plaintiff's "Exhibit C" to the Amended Complaint for the proposition that such Exhibit

> indicates that Plaintiff, and a white female employee, accepted acting positions with a willingness to take on extra duties with no compensation and no promises and which proves that Plaintiff's acting Unit Administrator assignment came with no promises, no increase in compensation and no time frame.

Defendant's Brief in Support, at 10. In that exhibit, which is a memorandum from J. B. Simmons, Mr. Simmons states that "[w]e appreciate their [plaintiff's and Ms. Lancaster's] willingness to take on extra duties with no compensation and no promises." Amended Complaint, at Ex. C. It is defendant's argument that the court must give full effect to such exhibit - - as if the contents of such Exhibit were themselves an allegation - - because plaintiff annexed it to her Amended Complaint. Professors Wright and Miller appear to disagree with defendant:

> In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.

5A Wright & Miller, Federal Practice & Procedure § 1357, at p. 299 (2d ed. 1990). The undersigned is mindful that "[w]here there is a conflict "between the bare allegations of the complaint and any exhibit attached [to the complaint] pursuant to Rule 10(c)[,] ... the exhibit prevails."" Braswell v. Haywood Regional Medical Center, 352 F.Supp.2d 639, 653 (W.D.N.C. 2005).

In considering Exhibit C, the undersigned is mindful that the district court instructed plaintiff to file an Amended Complaint and attach exhibits, but did not specify this particular exhibit. Next, the court has considered the purpose of the exhibit, which must be read in context with Amended Complaint. Plaintiff references Exhibit C four times in his allegations, for the following propositions: (1) that he was promoted on August 2, 2002, to

**11**

Acting Unit Administrator, Amended Complaint, at ¶ 15; (2) J. B. Simmons was the author of the August 16, 2002, Memorandum, id., at ¶ 16; (3) Ms. Lancaster was promoted at the same time as he was, id., at ¶ 17; and (4) that Mr. Furrie demoted him on April 29, 2003, despite having been promoted to Acting Unit Administrator on August 16, 2002. Id., at ¶ 20. At no point in the Amended Complaint does plaintiff allege or concede that he agreed to take on additional duties with no pay or compensation, and at no point does plaintiff state that he has submitted Exhibit C for the truth of the matter therein asserted by Mr. Simmons. While a person may reference and even annex the *Declaration of Independence* to support the statement that American independence was declared on July 4, 1776, that does not mean they have adopted the words contained therein as their own, unless they say that is what they intend to do. Clearly, plaintiff has provided the court with a copy of the August 2, 2002, memorandum to support his allegations. The truth of the matter therein asserted, that plaintiff and Ms. Lancaster volunteered for additional duties without compensation, is an issue better resolved through discovery. While Mr. Simmons may have made that statement in his memorandum, the allegations of the Amended Complaint are clear that both plaintiff and Ms. Lancaster soon asked to be fairly compensated for their additional duties.

Finding that plaintiff has to alleged "facts sufficient to state all the elements of his claim," in particular facts sufficient to allege an "adverse employment action" in the context of a Section 1981 claim of discrimination, the undersigned will recommend that defendant's Motion to Dismiss the First Cause of Action be denied.

**B. Title VII Claim for Retaliation**

Plaintiff's allegation of an "adverse employment action" in the context of retaliation is, as it must be, different and independent from the allegation that underpins the claim of discrimination. Again, plaintiff's Amended Complaint states in two paragraphs the Title VII

claim and incorporates by reference the other allegations of the Amended Complaint, which requires the court to hunt down the supporting allegations. It is clear, however, that plaintiff is contending that on April 29, 2003, he was demoted from the position of Acting Unit Administrator in retaliation for filing a charge of discrimination with the Office of Administrative Hearings. The question raised by defendant's motion is whether such an allegation is sufficient to allege an actionable "adverse employment action."

The breadth of "adverse employment action" that will support a claim for retaliation was recently addressed by the Supreme Court in <u>Burlington Northern and Santa Fe Ry. Co.</u>, in which the Court held, as follows:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.
> \* \* \*
> In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

<u>Id.</u>, 2006 WL, at 10. The court went on to hold that

> the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children.

<u>Id.</u>, at 11 (citation and corresponding internal quotation marks omitted). As was discussed at the hearing, <u>Burlington Northern and Santa Fe Ry. Co.</u> was decided in the context of a jury verdict, not on a motion to dismiss.

In moving to dismiss, defendant argues that plaintiff has suffered no detriment based on the alleged demotion and those allegations cannot, therefore, form the basis of a Title VII claim for retaliation. Defendant argues, as follows:

> All of the preceding facts alleged by Plaintiff defeat his claim of retaliation based on an alleged "demotion". Plaintiff suffered no change in his salary grade. The very nature of an "acting" position is that it is temporary. It is not a "demotion" when a temporary assignment comes to an end. Plaintiff's Exhibit C establishes his awareness of the temporary nature of the assignment and of the lack of compensation or any other promises. Termination of an acting assignment does not establish a decrease in compensation, job title, level of responsibility or opportunity for promotion because of its temporary nature.

Defendant's Brief in Support, at 10-11(citations omitted). As did the district court in its earlier Order, plaintiff has referenced the decision of the district court in <u>Forkkio v. Tanoue</u>, 131 F.Supp.2d 36 (D.C. 2001), <u>aff'd</u>, 306 F.3d 1127 (D.C. Cir. 2002), which found that reversion to paygrade G.S. 14 after a temporary position ended is not the equivalent of an adverse employment action because of the durational limits of the position. Unlike <u>Forkkio</u>, the allegations and exhibits attached to the Amended Complaint could just as well be read to support an allegation that the plaintiff was placed in an acting position of <u>unknown</u> duration. In Exhibit C, Mr. Simmons purportedly wrote that "[w]e don't know how long any of us will be in acting positions." Amended Complaint, Ex. C.

While plaintiff was aware of the temporary nature of his assignment, plaintiff's allegations paint a much different picture. Plaintiff alleges that on April 29, 2003, six days after filing the petition, he received a letter from the director of the department "which stated that he was not acting in any "acting" capacity. <u>Id.</u>, at ¶ 20. Plaintiff alleges that the director "made this assertion despite the August 16, 2002, Memorandum announcing Mr. Whittington's promotion to Acting Unit Administrator." <u>Id.</u> Plaintiff alleges that other persons who had been promoted to acting positions continued in those positions following plaintiff's April 29, 2003, demotion to Assistant Unit Administrator. <u>Id.</u>, at ¶ 21. Plaintiff further alleges that despite being demoted, he was still required to perform the duties of a Unit Administrator, but was after April 29, 2003, not compensated for such duties. <u>Id.</u>, at ¶

22. Plaintiff alleges that two months after the demotion, defendant acknowledged that he was entitled to compensation for his assumption of the Unit Administrator duties, and retroactively paid plaintiff an eight percent salary increase for the period March 15, 2002, through April 29, 2003, a sum of $2500. Id., at ¶ 23. Plaintiff also alleges that he continued to perform the duties of a unit administrator at the lesser paygrade up to December 14, 2005. Id., at ¶ 24. On that day, he alleges that director of the Swannanoa facility informed him as well as the other "Campus Supervisors" that they would now report to the Unit Administrator rather than the Assistant Director, and that his duties from that point forward were what they were when he was originally placed in the Assistant Unit Administrator position. Id. Plaintiff contends that he was not compensated for his additional duties between April 29, 2003, and December 14, 2005. Id.

Reading the allegations of the Amended Complaint in a light most favorable to plaintiff, it appears that plaintiff is alleging that his administrative complaint of discrimination resulted in him being prematurely terminated as an Acting Unit Administrator. Plaintiff has specifically alleged that other persons who had been promoted to acting positions continued in those position after April 29, 2003. Id., at ¶ 21. While the undersigned fully agrees with the decision in Forkkio that a federal employee can have no reasonable expectation of continued employment in a temporary assignment, plaintiff has alleged facts that, if later proven, could lead a reasonable employee to believe that the action taken against him was materially adverse. Burlington Northern and Santa Fe Ry. Co., 2006 W.L., at 10. Here, the allegations are that plaintiff as well as others were given acting assignments with greater responsibilities, that there was no definite date for such duties to end making them indefinite, that in close temporal proximity to filing his grievance plaintiff received a letter from the director which effectively relieved him of his acting position, that

others who had been given acting assignments were not terminated at the same time, and that he was not relieved of the substantive duties of the position until more than two years later, although he was relieved of any additional pay and the title in April 2003. The question asked by the Supreme Court is whether the alleged adverse employment action is the type of act that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Id. Clearly, if these allegations are later proven, a reasonable worker could have been dissuaded from making a charge of discrimination. As the Supreme Court held "[c]ontext matters." Id., 2006 W.L., at 11.

Finding that plaintiff has alleged "facts sufficient to state all the elements of his claim," in particular facts sufficient to allege an "adverse employment action" in the context of a Title VII claim of retaliation, the undersigned will recommend that defendant's Motion to Dismiss the Second Cause of Action be denied.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Second Motion to Dismiss (#18) be **DENIED**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: July 24, 2006

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge